# UNITED STATES DISTRICT COURT
# DISTRICT OF NEVADA

\* \* \*

| | |
|---|---|
| LAS VEGAS DEVELOPMENT GROUP, LLC, <br><br> Plaintiff, <br><br> v. <br><br> 2014-IH BORROWER, LP, *et al*., <br><br> Defendants. | Case No. 2:15-cv-00396-RFB-GWF <br><br> **ORDER** <br><br> Intervenor Defendants' Motion to Lift Stay (ECF No. 100) and Plaintiff's Motion to Remand (ECF No. 102) |

## I. INTRODUCTION

Before the Court comes Intervenor Defendant and Counter Claimant Federal Housing Finance Agency ("FHFA"), as Conservator for the Federal National Mortgage Association[1] ("Fannie Mae"), Defendant 2014-I IH Borrower, L.P., and Defendant / Counter-Defendant Hidden Canyon Owners Association (collectively, "the Moving Parties")'s Motion to Lift Stay (ECF No. 100), and Plaintiff Las Vegas Development Group ("LVDG")'s Motion to Remand to State Court (ECF No. 102). For the reasons stated below, the Motion to Lift Stay is GRANTED, and the Motion to Remand to State Court is DENIED.

## II. BACKGROUND

On January 1, 2015, LVDG filed a Complaint in the Eighth Judicial District Court against Republic Mortgage, Recontrust Company, N.A., Magdalena Manchester, Magdalena M.

---

[1] Fannie Mae is also a Defendant, Cross Defendant, and Counter Claimant in this action.

- 1 -

Manchester Revocable Trust, Fannie Mae, THR Nevada II, L.P., THR Property Borrower, L.P., THR Property Guarantor, L.P., THR Property Holdco, L.P., 2014-1 IH Property Holdco, L.P., 2014-1 IH Equity Owner, L.P., 2014-1 IH Borrower, L.P., Christina Trust, and Doe and Roe Corporation Defendants (collectively, "Defendants"), alleging various claims related to a parcel of real property sold at a non-judicial foreclosure sale. (ECF No. 1-1). Specifically, LVDG asserts seven causes of action: (1) Quiet Title, against all Defendants; (2) Unjust Enrichment, against Republic Mortgage, Recontrust, and Fannie Mae; (3) Equitable Mortgage, against Republic Mortgage and Former Owners; (4) Slander of Title, against all Defendants; (5) Conversion, against Republic Mortgage and Recontrust; (6) Equitable Relief and Wrongful Foreclosure; (7) Equitable relief and rescission. Defendant Fannie Mae filed a Petition for Removal on March 4, 2015. (ECF No. 1). Fannie Mae filed an Answer with Counterclaims on March 11, 2015. (ECF No. 4). In its Twelfth Affirmative Defense, Fannie Mae argued that LVDG's claim of title is barred by 12 U.S.C. § 4617(j)(3), "which precludes an HOA sale from extinguishing Fannie Mae's interest in the Property and preempts any state law to the contrary." (ECF No. 4 at 21). Importantly, Fannie Mae also asserted a Counterclaim for quiet title or equivalent equitable relief to protect its property interests against the interests of LVDG and the HOA based upon an assertion of 12 U.S.C. § 4617(j)(3) – the "Federal Foreclosure Bar." (ECF No. 4 at 25.)

The Court held a hearing on several Motions for Summary Judgment on August 3, 2016. Those motions were denied. (ECF No. 88). On October 13, 2016, this Court held a hearing on a Motion to Stay the case, pending further developments in the Ninth Circuit case, Bourne Valley Court Tr. v. Wells Fargo Bank, N.A., 832 F.3d 1154, 1157–58 (9th Cir. 2016), r'hng denied (9th Cir. Nov. 4, 2016), cert. denied, 137 S. Ct. 2296 (2017).[2] The Court stated on the record that the case would be stayed. (ECF No. 97).

A Motion to Lift the Stay and to enter a Scheduling Order was filed on January 18, 2017. (ECF No. 100). LVDG filed a Response and Partial Opposition to the Motion to Lift Stay on January 20, 2017. (ECF No. 101). On January 20, 2017, LVDG filed a Motion to Remand to State

---

[2] The Court notes that it has certified an additional question to the Nevada Supreme Court regarding NRS 116's notice requirements. 2:16-cv-02561-RFB-PAL, ECF No. 41.

Court. (ECF No. 102). On January 24, 2017, 2014-1 IH Borrower, L.P., 2014-1 IH Equity Owner, L.P, THR Nevada, L.P., THR Property Borrower, L.P., THR Property Guarantor, L.P., THR Property Holdco, L.P., 2014-3 IH Property Holdco, L.P., and Christiana Trust (collectively, "Joining Defendants") filed a Joinder to the Motion to Lift Stay. (ECF No. 103). The Moving Parties filed a Reply to the Motion to Lift Stay on January 27, 2017. (ECF No. 104). On February 3, 2017, FHFA and Fannie Mae filed a Response / Opposition to the Motion to Remand. (ECF No. 105). Joining Defendants filed a Joinder to the Response / Opposition to the Motion to Remand on February 6, 2017. (ECF No. 106). On February 10, 2017, LVDG filed a Reply to its Motion to Remand. (ECF No. 107). The Court held a hearing on September 19, 2017 on the Motion to Lift Stay and the Motion to Remand, and took the matter under submission. (ECF No. 110).

### III. LEGAL STANDARD

#### A. Removal Jurisdiction

28 U.S.C. § 1441(a) grants federal district courts jurisdiction over state court actions that originally could have been brought in federal court. "Removal and subject matter jurisdiction statutes are strictly construed, and a defendant seeking removal has the burden to establish that removal is proper and any doubt is resolved against removability." Hawaii ex rel. Louie v. HSBC Bank Nevada, N.A., 761 F.3d 1027, 1034 (9th Cir. 2014) (citation and quotation marks omitted).

#### B. Federal Question Jurisdiction

A district court has "original jurisdiction of all civil actions arising under the Constitution, laws, or treaties of the United States." 28 U.S.C. § 1331. An action "arises under" federal law when "federal law creates the cause of action." Merrell Dow Pharm. Inc. v. Thompson, 478 U.S. 804, 808 (1986). But even where a claim finds its origins in state rather than federal law, the Supreme Court has identified a "special and small category" of cases in which federal question jurisdiction still exists. Empire Healthchoice Assurance, Inc., v. McVeigh, 547 U.S. 677, 699 (2006). Federal jurisdiction over a state law claim will lie if a federal issue is: (1) necessarily raised, (2) actually disputed, (3) substantial, and (4) capable of resolution in federal court without disrupting the federal-state balance approved by Congress. See Grable & Sons Metal Prods., Inc.

v. Darue Eng'g & Mfg., 545 U.S. 308, 314 (2005) (explaining that the "the question is, does a state-law claim necessarily raise a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities."). Grable does not provide a per se "test" for federal question jurisdiction. However, the presence of all four Grable factors suggests that federal jurisdiction is proper because there is a "serious federal interest in claiming the advantages thought to be inherent in a federal forum," which can be vindicated without disrupting Congress's intended division of labor between state and federal courts. Id. at 313 (citations omitted).

**IV. DISCUSSION**

The Motion to Remand is discussed first below.

**a. Initial Grounds for Removal**

In its Petition for Removal, Fannie Mae stated that the basis for removal was 12 U.S.C. Section 1723a(a) ("the Fannie Mae Charter") as well as the Ninth Circuit's decision in Lightfoot v. Cendant Mortg. Corp., 769 F.3d 681 (2014). In that case, the Ninth Circuit held that the "sue-and-be-sued" clause of 12 U.S.C. § 1723a(a) grants federal courts jurisdiction over cases in which Fannie Mae is a party. Lightfoot, 769 F.3d at 683. The statute specifically allows Fannie Mae to "in its corporate name, to sue and to be sued, and to complain and to defend, in any court of competent jurisdiction, State or Federal . . . ." 12 U.S.C. § 1723a(a).

In the Motion to Remand, LVDG argues that this Court no longer has subject matter jurisdiction, as the Supreme Court reversed the Ninth Circuit's 2014 decision. Lightfoot v. Cendant Mortg. Corp., 137 S. Ct. 553 (2017). The Supreme Court focused on the "court of competent jurisdiction" phrase in the Fannie Mae charter, finding that the phrase requires a court to have subject-matter jurisdiction over the claims before it separately from the invocation of the charter. 137 S. Ct. at 560-61. The Court held that "Fannie Mae's sue-and-be-sued clause is most naturally read not to grant federal courts subject-matter jurisdiction over all cases involving Fannie Mae. In authorizing Fannie Mae to sue and be sued 'in any court of competent jurisdiction, State or Federal,' [the clause] permits suit in any state or federal court already endowed with subject-matter

jurisdiction over the suit." Id. at 561. Fannie Mae contends that, regardless of the Supreme Court's decision in Lightfoot, LVDG's request for declaratory judgment avoided a "coercive action" raising a federal question which Fannie Mae could have brought, and therefore this Court has subject-matter jurisdiction under the "coercive action" doctrine even if Fannie Mae did not assert this contention at the time of removal. See Medtronic, Inc. v. Mirowski Family Ventures, LLC, 134 S. Ct. 843, 848 (2014) (explaining the "coercive action" doctrine).

Thus, the Court must resolve two questions: first, whether Fannie Mae can now rely upon an alternative ground for subject-matter jurisdiction, and second, whether such ground did exist at the time of removal. The Court finds that both questions are answered in the affirmative and that subject-matter jurisdiction existed at the time of removal. The Court explains its reasoning below.

### b. Coercive Action Doctrine Applies

LVDG contends that there is no substantial federal question found on the face of the complaint or in its claims, and that Fannie Mae attempts to rely upon a federal defense – the Federal Foreclosure Bar – to now revive federal question jurisdiction. LVDG argues that it raised only state law claims in its Complaint, and that none of the causes of action "arise under" federal law.

Fannie Mae argues, and this Court agrees, however, that the "coercive action" doctrine provides a basis for jurisdiction in this case. As the Supreme Court recently explained in Medtronic, the coercive action doctrine provides a defendant in a declaratory judgment action a limited avenue to bring suit in federal court, even if the initial claim for declaratory relief is not based upon federal law. Medtronic, Inc. v. Mirowski Family Ventures, 134 S. Ct. 843, 848 (2014) (citations omitted) ("We also agree that federal courts, when determining declaratory judgment jurisdiction, often look to the 'character of the threatened action.' That is to say, they ask whether 'a coercive action' brought by 'the declaratory judgment defendant' . . . 'would necessarily present a federal question.'"); see also Janakes v. United States Postal Serv., 768 F.2d 1091, 1093 (9th Cir. 1985) (citation omitted) ("If, however, the declaratory judgment defendant could have brought a coercive action in federal court to enforce its rights, then we have jurisdiction notwithstanding the declaratory judgment plaintiff's assertion of a federal defense.")

The Ninth Circuit in <u>Janakes</u> specified that the coercive action must "arise under" federal law, and cannot be based solely upon "diversity of citizenship or another, non[-]substantive jurisdictional statute." <u>Id.</u> (citation omitted). Such suit need not have actually been brought by the declaratory judgment defendant; federal question jurisdiction attaches even if the coercive action is hypothetical. <u>Id.</u> at 1094. Moreover, jurisdiction will exist even if the claim serving as the basis for jurisdiction is later abandoned or dismissed. <u>See</u> <u>Id.</u> at 1095 (citations omitted) (finding that, when defendant abandoned its statutory claims and pursued only federal common-law claims, "waiver of [defendant's] statutory claim, however, [did] not affect [the court's] jurisdictional analysis because the parties cannot by stipulation or waiver grant or deny federal subject matter jurisdiction.")

LVDG argues that the coercive action doctrine does not apply here because the assertion of the Federal Foreclosure Bar by Fannie Mae is simply a federal defense to a state law claim and as such cannot establish federal question jurisdiction. <u>See</u> <u>Janakes</u>, at 1093 ("The assertion of a federal defense does not confer subject matter jurisdiction under 28 U.S.C. § 1331 for federal questions.") Fannie Mae argues, however, that the "coercive action" doctrine discussed in <u>Janakes</u> applies here because Fannie Mae could have brought a separate federal declaratory judgment action under 28 U.S.C. §2201 seeking quiet title or similar equitable claim based on the Federal Foreclosure Bar to protect its property interests. And, indeed, Fannie Mae actually asserted a counterclaim for quiet title or declaratory relief establishing its property interests in this case. The Court finds that, given the alleged facts in this case, a declaratory judgment action seeking quiet title based upon an assertion of the Federal Foreclosure Bar is a coercive action creating federal jurisdiction for this case. The Court finds that the assertion of the Federal Foreclosure Bar in this case is not simply an affirmative defense for which there would be no federal jurisdiction. That is because the determination of whether or not the Federal Foreclosure Bar applies is essential for deciding the quiet title or equitable claims regarding property interests brought by LVDG and by Fannie Mae. The issue of the Federal Foreclosure Bar pre-empting the application of state law is one suitable for a federal court to decide. Here, the Federal Foreclosure Bar requires the consent of Fannie Mae's conservator prior to the levy, attachment, garnishment, foreclosure, or sale of the

conservator's property. 12 U.S.C. § 4617(j)(3). Implicit in this statute is Fannie Mae's right to challenge an unauthorized foreclosure before a federal court.

This finding is compelled by the Supreme Court's decision in Grable & Sons Metal Products v. Darue Engineering and Manufacturing. 545 U.S. 308 (2005). As the Supreme Court explained and held in Grable, state law claims for quiet title have long provided bases for federal court jurisdiction. 545 U.S. at 315 (finding that "quiet title actions hav[e] been the subject of some of the earliest exercises of federal-question jurisdiction over state-law claims" and discussing three cases in which quiet title claims arose under federal law). Several pre-Grable cases suggest that, where a plaintiff's allegations in an action to quiet title necessarily implicate federal law, federal jurisdiction is proper. See Wilson Cypress Co. v. Del Pozo Y Marcos, 236 U.S. 635, 643-644 (1915) (denying motion to dismiss in a quiet title case where the complaint involved a grant of land made pursuant to treaty and finding that "there [was] scarcely a contention of complainants which [did] not primarily or ultimately depend upon the laws of the United States."); see also Northern P. R. Co. v. Soderberg, 188 U.S. 526, 528 (1903) (finding that federal jurisdiction was proper both on grounds of diversity and because "it appear[ed] that [plaintiff's] title rest[ed] upon a proper interpretation of the land grant act of 1864 . . . [which provided] another ground wholly independent of citizenship[.]").

Whether the Federal Foreclosure Bar would have prevented, or as a matter of law did prevent, LVDG's purchase of the subject property in the nonjudicial foreclosure sale is an essential consideration for LVDG's claim, regardless of whether the claim itself explicitly refers to federal law. The Court finds the precedent in Grable to be both persuasive and binding here as to the determination of federal question jurisdiction.

### i. Quiet Title Claims Necessarily Raised a Federal Issue

The Court finds, as explained above, that there is a coercive action based upon substantive federal law that Fannie Mae could have raised – that the sale of the subject property to LVDG violated 12 U.S.C. 4617(j)(3) and that Fannie Mae thus retained its property rights. The first element of Grable is therefore satisfied. The Court further finds pursuant to Janakes that it was

not necessary for Fannie Mae to raise this argument for the Court to determine its jurisdiction. 768 F.2d at 1095.

### ii. An Actual Dispute Existed at the Time of Removal

In applying Grable, the Court must also determine whether the claims in this case raise a federal issue that is actually in dispute. A finding of federal question jurisdiction in a complaint asserting exclusively state law claims requires a "contested federal issue[.]" Grable, 545 U.S. at 313 (2005) (citations omitted). An unresolved question is a crucial ingredient in such case, particularly when a land interest is involved. See Shulthis v. McDougal, 225 U.S. 561, 569 (1912) ("A suit to enforce a right which takes its origin in the laws of the United States is not necessarily, or for that reason alone, one arising under those laws, for a suit does not so arise unless it really and substantially involves a dispute or controversy respecting the validity, construction or effect of such a law, upon the determination of which the result depends. This is especially so of a suit involving rights to land acquired under a law of the United States.")

The instant case was filed in January 2015 and removed to this Court in March 2015. (ECF No. 1). At that time, there had not been a ruling on whether the Federal Foreclosure Bar preempted the Nevada "superpriority lien" statute; therefore, an actual dispute existed at the time of removal. On August 25, 2017, the Ninth Circuit decided Berezovsky v. Moniz, 869 F.3d 923. In a case with very similar facts, the Court affirmed the district court's finding that the Federal Foreclosure Bar preempts a Nevada statute which allows homeowners associations to foreclose on indebted properties and effect a "superpriority lien" over senior interests. Id at 926. The Court issued its decision to address an ongoing controversy, noting that a "clash of state and federal law has spawned considerable litigation in Nevada" on this topic. Id. at 925. This Court finds, however, that at the time this case was removed in 2015, there existed a question as to whether the Federal Foreclosure Bar preempted Nevada law as the Ninth Circuit's decision in Berezovsky had not been issued before removal in this case.

As the dispute still existed at the time the Supreme Court reversed Lightfoot, and at the time LVDG filed the instant Motion to Remand, the Court finds that the second element of Grable is satisfied.

### iii. Resolution of the Issue is Substantially Important to the Federal System

The Court also finds that LVDG's Complaint necessarily raises a federal issue that is also substantial. "The substantiality inquiry under Grable looks . . . to the importance of the issue to the federal system as a whole." Gunn v. Minton, 133 S. Ct. 1059, 1066 (2013). "[P]ure issue[s] of law" are more likely to be substantial because a federal court may settle the issue "once and for all." Empire Healthchoice Assurance, Inc., v. McVeigh, 547 U.S. 677, 700 (2006) (citation and quotation marks omitted). Conversely, "fact-bound and situation specific" inquiries are generally not considered to be substantial. Id. at 700-01.

The Ninth Circuit's decision in Berezovsky demonstrates the significance of the issue, particularly as the dispute generated much litigation in Nevada. The Court rested its decision on principles of federalism. Relying upon cases interpreting the Supremacy Clause, the Court determined that the Federal Foreclosure Bar operated as an absolute prohibition on foreclosures of property owned by FHFA and Fannie Mae, despite the existence of Nevada's "superpriority lien" statutory scheme. 869 F.3d at 931. The federal interest in preventing foreclosure on federal property pursuant to a state law is significant and clear. Moreover, the resolution of the dispute by the court in Berezovsky did not require fact-specific inquires, and conclusively settled the issue. Thus, the Court finds that the third Grable element is met.

### iv. Federal Court Resolution Has Not Disrupted the Federal – State Balance

The resolution of the dispute regarding the Federal Foreclosure Bar's effect on Nevada's "superpriority lien" statutory framework would not disrupt the federal versus state law balance. As, the Ninth Circuit, in Berezovsky, stated explicitly: "Nevada's ["superpriority lien"] law is an obstacle to Congress's clear and manifest goal of protecting [the conservator's] assets in the face of multiple potential threats, including threats arising from state foreclosure law." Id. Resolution from the federal court has thus provided harmony rather than discord and has established a clear answer for the many litigants bringing challenges on similar sets of facts. The Court finds that, at the time of removal in this case, the resolution of the dispute as to the Federal Foreclosure Bar would not have upset the federal – state balance. Indeed, the resolution of the dispute would and

did, in <u>Berezovsky</u>, bring closure to an existing tension between federal and state law. The fourth <u>Grable</u> factor is thus also satisfied.

As all four elements of the <u>Grable</u> framework are satisfied, the Court properly retains jurisdiction over this case.

       **c. Lifting the Stay**

Before the Court is also the Moving Parties' Motion to Lift the Stay. In <u>Bourne Valley Court Tr. v. Wells Fargo Bank, N.A.</u>, the Ninth Circuit held that Nevada Revised Statute 116, the "superpriority lien" statute, violates the Due Process Clause and is facially unconstitutional. 832 F.3d 1154, 1159-60 (9th Cir. 2016). LVDG relies upon the Ninth Circuit's mandate in the appeal, issued December 14, 2016, which vacated and remanded the judgment to the United States District Court, District of Nevada. The Supreme Court has since denied certiorari. 137 S. Ct. 2296 (2017). The Moving Parties request that the Court lift the stay and enter a scheduling order to set deadlines for dispositive motions. In light of the <u>Berezovsky</u> decision, the Court finds that lifting a stay is appropriate in this case. Therefore, the Motion is GRANTED.

## V. CONCLUSION

For the reasons stated above,

**IT IS ORDERED** that the Moving Parties' Motion to Lift Stay (ECF No. 100) is GRANTED. The parties are directed to submit a new scheduling order for approval within 10 days of this Order.

**IT IS FURTHER ORDERED** that Plaintiff's Motion to Remand (ECF No. 102) is DENIED.

**DATED** this <u>15th</u> day of December, 2017.

_____
**RICHARD F. BOULWARE, II**
**United States District Judge**